J-S78031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.H. | : | |
| | : | |
| Appellant | : | No. 493 EDA 2018 |

Appeal from the Judgment of Sentence September 11, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002733-2016

BEFORE: LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED JANUARY 28, 2019**

Appellant, J.H., appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after Appellant pled guilty to Rape of a Child, Attempted Murder, Kidnapping, and Burglary.[1] Appellant challenges the legality and the discretionary aspects of his sentence. After careful review, we affirm.

Between the late night hours of July 27, 2015 and the early morning hours of July 28, 2015, Appellant broke into a two-story row home in Philadelphia where V.H. and her two daughters, nine-year-old A.H. and five-year-old C.H. ("the victim"), were sleeping. After the victim woke up and exited her bedroom, she noticed Appellant standing behind a door. Appellant ordered the victim to enter another bedroom.

---

[1] 18 Pa.C.S.A. §§ 3121(c), 2501(a), 2901(a)(3), 3502(a)(1), respectively.

---

* Former Justice specially assigned to the Superior Court.

Thereafter, Appellant sexually assaulted the five-year-old victim, placing his penis into her vagina. Following the rape, Appellant took the victim downstairs and threw her on the ground in the backyard. Appellant violently beat the victim by repeatedly kicking and punching her face and body. Appellant left the victim in a state of unconsciousness in the weeds.

The victim was not discovered until the next morning when V.H. awoke to find her daughter missing. V.H. frantically searched throughout the home and sought her neighbors' help to find the victim. While the search party screamed the victim's name, the victim could not respond because she was unconscious. One of these neighbors, Ms. Williams, looked out her second-floor window and observed the victim's body lying in the backyard. V.H. rushed to help her daughter and noticed she was not wearing any underwear.

When the victim regained consciousness, she was so upset that she began to vomit; the victim told her mother "the man" had taken her there. When the police arrived, the responding officer noticed the victim was visibly disturbed and crying and observed the victim's face was bloody and swollen.

The officer took the victim and her mother to the emergency room where hospital personnel documented C.H.'s injuries: fractures to her right jaw and skull, a laceration to the corner of her right eye, significant bruising to her chest in a pattern consistent with a boot, bruises and lacerations all over her body, and liver damage. After observing that the victim's perineum was bruised and her hymen was swollen, medical personnel administered a sexual assault kit, which came back positive for the presence of sperm.

During a forensic interview on August 17, 2015, the victim was able to give detectives sufficient information to identify her rapist as Appellant, who was fifteen years old at the time of the attack. After Appellant's arrest, he consented to a DNA test, which revealed that Appellant was a match for the DNA collected from the victim's rape kit.

On August 18, 2015, the Commonwealth filed a delinquency petition against Appellant and notified him of its intent to seek to transfer his case to criminal court. Appellant conceded that the prosecution could prove a *prima facie* case for the charged offenses but challenged the transfer of the case.

On February 22, 2016, the lower court held a certification hearing. Appellant relied on the testimony of Dr. Joann Schladale, who emphasized Appellant's troubled childhood. Appellant had been sexually abused as a child, suffered neglect, and came from a broken home where his parents were separated, abused drugs, and at least one parent had been incarcerated. Appellant exhibited troubling behaviors that led to his placement at South Mountain – a secure treatment facility for juvenile sex offenders.

After reviewing Appellant's records, Dr. Schladale opined that the South Mountain facility did not adequately address Appellant's treatment needs. Shortly after his release from the facility, Appellant committed the instant offenses. However, Dr. Schladale admitted there were no in-state programs for juveniles that could offer the type of services Appellant needed. Further, Dr. Schladale opined that Appellant was at a high risk for sexually recidivating if he were placed in adult prison and later paroled.

The victim's mother also testified at the certification hearing to the persistent emotional problems the victim suffers after being raped and attacked by Appellant. The victim has difficulty sleeping, constantly insists on staying close to her mother, fears being around people, withdraws from relationships, and is easily startled by strange noises that remind her of the attack. Even the victim's sister, A.H., largely stopped talking and often sat alone in her room. At the conclusion of the hearing, the Honorable Lori A. Dumas certified Appellant's case to criminal court.

On May 22, 2017, Appellant entered a guilty plea before the Honorable Carolyn Nichols to rape of a child, attempted murder, kidnapping, and burglary. Sentencing was deferred for the preparation of a pre-sentence investigation, a mental health evaluation, and a recommendation from the Sexual Offender Assessment Board (SOAB).

On September 11, 2017, Judge Nichols sentenced Appellant to concurrent terms of fifteen to forty years' imprisonment for rape of a child and attempted murder, a consecutive term of five to ten years' imprisonment for kidnapping, and a consecutive term of twenty years' probation for burglary. Appellant was determined not to be a sexually violent predator. Thus, Appellant received an aggregate sentence of twenty to fifty years' incarceration followed by twenty years' probation. On September 21, 2017, Appellant filed a post-sentence motion, which was subsequently denied by operation of law. This timely appeal followed.

Appellant's brief contains the following issue statement:

> Did not the lower court abuse its discretion, as well as violate the Eighth Amendment's ban on cruel and unusual punishment, by imposing a manifestly excessive sentence of 20 to 50 years incarceration followed by 20 years probation upon an intellectually disabled child who was failed by the juvenile justice system?

Appellant's Brief, at 3. [2]

This issue statement can be divided into two separate arguments. First, Appellant claims the lower court failed to give adequate consideration to his background and imposed a manifestly excessive sentence that is inconsistent with requirements set forth in 42 Pa.C.S.A. § 9721(b), which provides that the "sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

These claims constitute challenges to the discretionary aspects of Appellant's sentence. The following principles apply to our consideration of whether Appellant's claim raises a viable challenge to the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and

---

[2] Due to the appointment of Judge Nichols to this Court, no trial court opinion was filed in this case.

(4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases.

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa.Super. 2018) (quotation marks, some citations, and bold omitted).

In this case, Appellant has: (1) timely filed a notice of appeal, (2) preserved the instant issue in a post-sentence motion, and (3) included a Rule 2119(f) statement in his brief. We therefore turn to the next requirement: whether the question raised by Appellant is a substantial question meriting our discretionary review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Id.*** (quotation marks and some citations omitted).

This Court has held that an averment that "the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of Appellant, as 42 Pa.C.S.A. § 9721(b) requires," presents a substantial question for our

- 6 -

review. *Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa.Super. 2012). We may proceed to review the merits of this claim.

Contrary to Appellant's claim, the sentencing transcript clearly shows the lower court imposed a sentence that was consistent with the protection of the public, took into account the impact the crime had on the victims, and considered Appellant's rehabilitative needs as required by Section 9721(b).

Given the gravity of Appellant's vicious rape and attack of the five-year-old victim after Appellant had burglarized her home in the middle of the night, the lower court recognized that Appellant's behavior raised "a very strong concern for public safety." N.T., 9/11/17, at 36. Although the victim was lucky to survive Appellant's horrific attack, the trial court recognized how extremely painful this horrific attack was for the victim, finding that "[t]he emotional and mental aftermath of th[e] incident will probably stay with [the victim] the rest of her life." N.T., 9/11/17, at 32.

The transcript also shows the lower court considered Appellant's status as a juvenile as well as his traumatic childhood, his intellectual disabilities, and the failure of the juvenile justice system to adequately treat Appellant's serious emotional and mental issues prior to his perpetration of the instant attack. Appellant's rehabilitative needs were thoroughly discussed as his own expert admitted that there were no in-state facilities for juveniles that could have adequately addressed Appellant's treatment needs and admitted that Appellant would have an "unbelievably high risk" for sexually recidiviating if allowed to return to society in his current state. N.T., 2/22/16, 105, 112.

Further, the lower court relied on a pre-sentence report that thoroughly discussed these issues before fashioning Appellant's sentence. It is well-established that, "[w]here the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors." **Commonwealth v. Conte**, ___A.3d___, 2018 PA Super 299 (Nov. 1, 2018) (quoting **Commonwealth v. Fullin**, 892 A.3d 843, 847 (Pa.Super. 2006)).

Moreover, Appellant concedes that the sentences imposed are within the statutory guidelines for each conviction. Recognizing that Appellant faced a maximum of one hundred twenty years' imprisonment for the charged offenses, the lower court stated that it intended its aggregate sentence of twenty to fifty years' incarceration to "reflect some mitigation." N.T., 9/11/17, at 37. To the extent that Appellant suggests that he was entitled to a more lenient sentence based on an individualized assessment of the facts of this case, we note that weighing the Section 9721 factors is "exclusively for the sentencing court, and an appellant court [cannot] substitute its own weighing of those factors." **Commonwealth v. Bowen**, 975 A.2d 1120, 1123-24 (Pa.Super. 2009) (citation omitted). Therefore, we find the lower court properly exercised its discretion in imposing Appellant's sentence.

Appellant also claims his aggregate term of twenty to fifty years' imprisonment followed by twenty years' probation constitutes cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution.

As Appellant characterizes this aggregate term as an "effective maximum sentence of life," he argues his sentence is unconstitutional under **Graham v. Florida**, 560 U.S. 48 (2010). Appellant's Brief, at 27. We disagree.

In **Graham**, the Supreme Court of the United States found that the Eighth Amendment prohibits sentences of life imprisonment without parole for juveniles who did not commit homicide. **Graham**, 560 U.S. at 82. However, the High Court specifically distinguished sentences that provided "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." **Id**. at 75.

While Appellant concedes that he did not receive an actual sentence of life imprisonment, he suggests that his lengthy aggregate sentence can be deemed a *de facto* life sentence, and is thus unconstitutional. This Court has held that a sentencing court cannot circumvent the Eighth Amendment's prohibition on LWOP sentences for juvenile offenders by imposing a *de facto* life sentence, that is, "a term-of-years sentence when parole would be unavailable until after the natural life expectancy of the defendant." **Commonwealth v. Foust**, 180 A.3d 416, 432 (Pa.Super. 2018).

While Appellant challenges the constitutionality of his aggregate sentence, "we must consider the individual sentences, not the aggregate, to determine if the trial court imposed a term-of-years sentence which constitutes a *de facto* LWOP sentence." **Id**. at 438. As noted above, Appellant was sentenced to concurrent terms of fifteen to forty years' imprisonment for rape of a child and attempted murder, a consecutive term of five to ten years'

imprisonment for kidnapping, and a consecutive term of twenty years' probation for burglary.

Appellant's claim that he received a *de facto* life sentence is unavailing as his longest minimum sentence is fifteen years' incarceration. As this sentence provides "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" and makes parole available well within his natural life expectancy, there is no merit to Appellant's argument that his sentence is unconstitutional under the Eighth Amendment. ***See Graham***, ***supra***; ***Foust***, ***supra***.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/19