J-S30034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                   :             PENNSYLVANIA
                                   :
           v.                         :
                                   :
                                   :
CHARLES MERRELL FRANK          :
                                   :
           Appellant              :       No. 1875 WDA 2019

Appeal from the Judgment of Sentence Entered June 28, 2018
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001312-2017

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED JULY 21, 2020**

Appellant Charles Merrell Frank appeals from the judgment of sentence entered by the Blair County Court of Common Pleas after a jury convicted Appellant of Involuntary Deviate Sexual Intercourse (IDSI), Criminal Conspiracy, Aggravated Assault, Assault by Prisoner, Aggravated Indecent Assault, Terroristic Threats, Unlawful Restraint, Simple Assault (two counts), False Imprisonment, Recklessly Endangering Another Person, and Harassment.[1] Appellant challenges the weight of the evidence supporting two of his convictions and claims his aggregate sentence is excessive. We affirm.

Appellant was charged with the aforementioned offenses in connection with the March 16, 2017 assault of C.S. ("the complainant"), a fellow inmate

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 3123(a)(1), 903, 2702(a)(1), 2703(a), 3125(a)(2), 2706(a)(1), 2902(a)(1), 2701(a)(1) and (3), 2903(a), 2705, and 2709(a)(1). respectively.

in the Blair County Prison. The prosecution alleged that Appellant, along with inmates Zachary Moore, Curtis Ramsey, Dalaun Carroll, Allen Grager, and Maurice Wakefield conspired to confiscate a bag of tobacco that the complainant had concealed in his rectum. Appellant was charged with IDSI and Aggravated Indecent Assault based on allegations that Appellant penetrated the complainant's anus with a toothbrush and his fingers.

Following the assault, three of the inmates (Moore, Ramsey, Grager) entered guilty pleas and received substantial prison sentences. Carroll agreed to cooperate with the prosecution and was sentenced at a later date. Appellant and Wakefield proceeded to a jury trial.

On the day in question, the complainant, who had been previously housed in the F-Block of the prison, was transferred to E-Block as a result of an internal infraction, and placed in Cell #7 with F.F. and two other inmates. At the time of his transfer in the morning, the complainant had stored tobacco in his shoes and his rectum. Shortly after his transfer, the complainant traded the tobacco he had stored in his shoes for a line of Subutex and commissary items from inmates Carroll and Ramsey. When the inmates asked for more tobacco, the complainant indicated that he had additional tobacco stored in his rectum. Notes of Testimony (N.T.), 4/2/18, at 98-102, 166-171; N.T, 4/3/18, at 15-18.

One of the complainant's cellmates, F.F., testified that several hours later, in the evening hours of March 16, 2017, three inmates (Ramsey, Grager, and Moore) entered his cell. F.F. was alone in the cell while Appellant was in

prison yard. The three inmates threw F.F. to the ground, held a shank to his throat, and threatened to slit his throat in an attempt to get the tobacco that they believed the complainant had hid in the cell. Once F.F. convinced his attackers there was no tobacco in the cell, Ramsey, Grager, and Moore left Cell #7. N.T., 4/2/18, at 103-107.

Later in the evening, before the cell lockdown at 10:00 p.m., the complainant asserted that Appellant, Moore, Ramsey, Carroll, Grager, and Wakefield lured him into Cell #1, where they cornered him and demanded that he give them his tobacco. The men harassed the complainant and told him that the tobacco retrieval could be done the "easy way" or the "hard way." Appellant admitted that he told the complainant that he "would prefer to do it the hard way." N.T., 4/2/18, at 173-182; N.T., 4/4/18, at 142.

The complainant agreed to give the inmates his tobacco and sat on the toilet to push the tobacco out himself. After the complainant was unable to retrieve the tobacco, Appellant put on gloves to extricate the tobacco from the complainant's rectum using his fingers with pressure such that the complainant felt substantial pain. The complainant also indicated that he also felt a hard object being thrust into his rectal cavity. After Appellant was unable to retrieve the tobacco from the complainant's rectum, the inmates punched and kicked the complainant multiple times in his head and ribs, causing his ear to be "split, ripped almost in half." N.T., 4/2/18, 195. Following the assault, there was blood and feces all over the toilet, on the floor, in the

complainant's underwear, and on toothbrushes in the sink. N.T., 4/2/18, at 185-196, 202.

The assault was stopped as cell lockdown time arrived at 10:00 p.m. Before returning to his cell, Wakefield threatened the complainant's cellmates to ensure that the complainant delivered the tobacco. F.F. testified that when the complainant returned to the cell after the assault, he appeared to be beaten badly such that "the top part of his ear was cut off – almost off." N.T. 4/2/18, at 130. F.F. also recalled that the complainant had a strong odor of feces. After the complainant was eventually able to extricate the tobacco on his own, F.F. put the tobacco in a sock and threw it over to a cell across the prison where the other inmates were housed. N.T., 4/2/18, at 129-35.

The complainant reluctantly revealed the assault to prison officials when his cellmates notified them that the complainant needed medical treatment. While Appellant admitted that he initially denied being assaulted in a statement to prison officials, he explained he did so as he was afraid that he would be harmed by the other inmates when he returned to his cell. Appellant recalled that Grager and Wakefield told him to keep his mouth shut or things would get worse. The complainant eventually identified Appellant as the individual who had penetrated his rectal cavity with his fingers and an object. N.T. 4/2/18, at 41-48, 130-34, 207-211, 217.

The Commonwealth also offered the testimony of Dalaun Carroll, who admitted that he entered into an agreement with Appellant, Ramsey, Wakefield, Grager, and Moore to corner the complainant in a cell to steal his

tobacco. While Carroll admitted the complainant was beaten in the cell, he denied seeing Appellant or the other inmates attempting to retrieve the tobacco from the complainant's person but indicated that the complainant was simply trying to do it himself. N.T., 4/3/18, at 12-18, 40-53.

C.M. and K.C., inmates who resided in Cell #1 at the time of the attack, testified that after the group of inmates left their cell, there was blood and feces everywhere and bloody toothbrushes in their sink. C.M. testified that he witnessed the attack and observed Appellant moving his hand in and out of the complainant's anus. N.T., 4/3/18, at 97, 139-40.

The Commonwealth also presented the testimony of Sexual Assault Nurse Examiner, Kevin Clark, who examined the complainant the night following the attack. Clark observed that complainant exhibited no "evidence of acute bleeding, and no dried blood at the rectum or visible findings such as bruising, swelling, superficial lacerations or anything thereof to the rectal region." N.T., 4/3/18, at 87. However, Clark admitted that he did not perform an internal examination as the complainant did not show external trauma or report any rectal discomfort. N.T. 4/3/18, at 87-89.

Clark also testified that the mere fact that the complainant's external examination was normal did not mean he was not assaulted in the rectal area as "the patient could still have presence of pain without any kind of visual finding." N.T., 4/3/18, at 87. Moreover, Clark indicated it was typically uncommon to find injuries in an examination of a patient's anus as the rectal cavity heals pretty rapidly. N.T. 4/3/18, at 87-89.

Appellant testified on his own behalf, admitting guilt for some of the crimes charged, but denying the allegations of sexual assault. While Appellant admitted putting on a glove and snapping it, he claimed that he did that only to "terrorize" the complainant and motivate him to get the tobacco on his own. Appellant denied touching the complainant's anus and claimed that the complainant attempted to retrieve the tobacco himself with toothbrushes and a shampoo bottle. Appellant admitted that the other inmates began to attack the complainant when the complainant was unable to retrieve the tobacco. N.T. 4/4/18, 143-49.

Wakefield, Appellant's co-defendant, testified similarly, indicating that the other inmates kicked and punched the complainant after he could not produce the tobacco, but denied that any of the inmates sought to retrieve the tobacco from the complainant's rectum. N.T., 4/5/18, at 54-59.

At the conclusion of trial, the jury convicted Appellant on all charges.[2] On June 28, 2018, the trial court sentenced Appellant to ten to twenty years' incarceration for IDSI, ten to twenty years' incarceration for aggravated assault, five to ten years' imprisonment for aggravated indecent assault, and three to six years' incarceration for assault by prisoner.[3] These sentences

---

[2] The jury convicted Appellant's co-defendant, Wakefield of similar charges. Wakefield was sentenced to an aggregate term of nine to eighteen years' imprisonment. After Wakefield appealed, this Court affirmed the judgment of sentence. **See Commonwealth v. Wakefield**, 1306 WDA 2018 (Pa.Super. November 8, 2019) (unpublished memorandum).

[3] The trial court noted that Appellant's sentences for IDSI, conspiracy, and aggravated assault were mandatory minimum sentences applicable under 18 Pa.C.S.A. § 9714 as "second strike" offenses.

were set to run consecutively. Appellant also received concurrent sentences of ten to twenty years' imprisonment for conspiracy and two terms of one to two years' imprisonment for terroristic threats and unlawful restraint. No further penalties were imposed on the remaining charges. Thus, Appellant initially received an aggregate sentence of twenty-eight to fifty-six years' of incarceration. Appellant did not file a post-sentence motion or an appeal.

On January 14, 2019, Appellant filed a *pro se* PCRA petition seeking the reinstatement of his post-sentence and appellate rights. The Commonwealth did not object to this petition, and on July 24, 2019, the lower court reinstated Appellant's post-sentence rights *nunc pro tunc*.

After Appellant filed a post-sentence motion, the trial court granted Appellant's relief in part based on his challenge to his mandatory minimum sentences. On November 19, 2019, the trial court resentenced Appellant to nine to eighteen years' imprisonment for IDSI, seven to fourteen years' imprisonment for conspiracy, and six to thirteen years' for aggravated assault. The other portions of the sentence order remained the same. Thus, Appellant received an aggregate sentence of twenty-three to forty-seven years' imprisonment. Appellant filed timely post-sentence motions, which were subsequently denied. This appeal followed.

Appellant raises the following issues for our review:

1. Was the verdict of guilt on counts of Involuntary Deviate Sexual Intercourse and Aggravated Indecent Assault was [sic] against the weight of the evidence?

2. Did the lower court abuse its discretion in sentencing Appellant to an excessive term of imprisonment of 23 to 47 years, including consecutive sentences, which contravened the fundamental norms of sentencing set forth in 42 Pa.C.S.A. § 9721(b)?

Appellant's Brief, at 5.

Appellant first challenges the weight of the evidence supporting his convictions for IDSI and Aggravated Indecent Assault. Our standard of review is as follows:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> [**Commonwealth v. Widmer**]*,* 560 Pa. [308,] 321–22, 744 A.2d [745,] 753 [(2000)] (emphasis added).
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:
>
>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued

- 8 -

represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Widmer*, 560 Pa. at 322, 744 A.2d at 753 (quoting *Coker v. S.M. Flickinger Co.,* 533 Pa. 441, 447, 625 A.2d 1181, 1184–85 (1993)).

*Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1055 (2013) (some internal citations omitted). In order for an appellant to be entitled to a new trial on the grounds that the verdict is against the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Akhmedov*, 216 A.3d 307, 326 (Pa.Super. 2019) (*en banc*).

Appellant challenges his convictions for IDSI and Aggravated Indecent Assault, both of which require proof that Appellant penetrated the victim. To be convicted of IDSI under Section 3123(a)(1) of the Crimes Code, the Commonwealth must prove that the accused "engage[d] in deviate sexual intercourse with a complainant … by forcible compulsion." 18 Pa.C.S.A. § 3123(a)(1). The Crimes Code defines **"**[d]eviate sexual intercourse" as:

> [s]exual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures.

18 Pa.C.S.A. § 3101.[4]

_____

[4] Our Supreme Court has held that "[d]igital penetration does not fall within any of the conduct described by our legislature as sexual intercourse or

To be convicted of Aggravated Indecent Assault under Section 3125(a)(2) of the Crimes Code, the Commonwealth must show that the accused "engage[d] in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement" and "the person does so by forcible compulsion."  18 Pa.C.S.A. § 3125(a)(2).

Appellant concedes that the Commonwealth could charge him separately with IDSI for the allegation of penetration of the complainant's anus with a foreign object (toothbrush) and Aggravated Indecent Assault for the allegation of digital penetration.  However, Appellant limits his weight challenge to suggest that the Commonwealth did not meet its burden of proving the element of penetration beyond a reasonable doubt.

Appellant specifically argues that while the complainant claimed that Appellant penetrated his anus with his fingers and toothbrushes, the complainant admitted that he did not see the individual who was behind him or the object that was used.  In addition, Appellant notes that the complainant initially denied being assaulted, did not immediately request medical assistance, did not report to the nurse that he had been assaulted with a foreign object, and did not sustain any injury to his anus as reported in a subsequent examination by a sexual assault nurse examiner.

---

deviate sexual intercourse." ***Commonwealth v. Kelley***, 569 Pa. 179, 187, 801 A.2d 551, 555 (2002).

In denying Appellant's challenge to the weight of the evidence, the trial court noted that the prosecution offered ample, credible testimony to corroborate the complainant's account of the assault. C.M., an inmate who resided in the cell where the assault took place, testified that he witnessed the attack and observed Appellant's hand going in and out of the complainant's rectum. Several inmates testified to the condition of that cell after the assault, reporting that there was blood and feces everywhere, including on a pair of gloves in the toilet and toothbrushes in the sink. Appellant admitted to wearing gloves during the assault, but claimed he did it only to scare the complainant.

While the complainant conceded that he denied being assaulted in an initial statement to prison officials, he explained he did so as he was afraid that he would be harmed by the other inmates when he returned to his cell. The complainant recalled that several of the inmates that participated in the assault told him to keep his mouth shut or things would get worse.

We also reject Appellant's claim that the complainant's medical examination proved that he was not assaulted. While Sexual Assault Nurse Examiner Clark examined the complainant nearly one day after the assault occurred and noted that the complainant exhibited no external bleeding or external trauma, Clark did not perform an internal examination. Moreover, Clark emphasized that the absence of injury to an individual's anus does not invalidate the individual's claim that they had been assaulted.

As a result, in reviewing all the evidence presented at trial, we find that the trial court did not abuse its discretion in finding that the jury's verdicts were supported by the weight of the evidence.

Appellant also argues that the trial court abused its discretion in running his sentences consecutively, resulting in an excessive aggregate sentence. The following principles apply to our consideration of Appellant's challenge to the discretionary aspects of his sentence:

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors imping on the sentencing decision to exceptional cases.

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa.Super. 2018) (quotation marks, some citations, and emphasis omitted).

In this case, Appellant has: (1) timely filed a notice of appeal, (2) preserved the instant issue in a post-sentence motion, and (3) included a Rule

- 12 -

2119(f) statement in his brief. We turn to the next requirement: whether Appellant raised a substantial question meriting our discretionary review. This Court has recognized that:

> [t]he determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Id.* (quotation marks and some citations omitted).

Appellant challenges the trial court's decision to impose consecutive sentences that amounted to an aggregate sentence of twenty-three to forty-seven years' imprisonment. This Court has specifically held that:

> [a] sentencing court's decision to impose consecutive as opposed to concurrent sentences generally does not present a substantial question. *See Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014) (noting that the decision to impose consecutive or concurrent sentences lies within the discretion of the trial court). However, "the imposition of consecutive, rather than concurrent, sentences may raise a substantial question… where the aggregate sentence is unduly harsh, considering the nature of the crimes and length of imprisonment." *Commonwealth v. Moury*, 992 A.2d 162, 171–172 (Pa. Super. 2010). *Accord Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa.Super. 2010) ("[A substantial question is presented when] the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue").

*Commonwealth v. Sarvey*, 199 A.3d 436, 455–56 (Pa.Super. 2018).

> [A] defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence;

- 13 -

however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

***Commonweatlh v. Diehl***, 140 A.3d 34, 45 (Pa.Super. 2016) (citation omitted).

Appellant asserts that the trial court abused its discretion in ordering his standard range sentences to run consecutively as he argues that the grounds for his charges involves conduct that arose in one criminal episode. While Appellant concedes that his IDSI and Aggravated Indecent Assault convictions were based on separate actions involving foreign object and digital penetration of the complainant's anus, he asserts that "this distinction does not justify separate consecutive sentences for both offenses." Appellant's Brief, at 19. Appellant similarly concedes that his convictions for Aggravated Assault and Assault by Prisoner do not merge, but claims there is no justification for running these sentences consecutively.

Even assuming that Appellant has raised a substantial question for our review, it is well-established that "defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence." ***Commonwealth v. Foust***, 180 A.3d 416, 434 (Pa.Super. 2018). This Court has held that "[t]he mere fact that the crimes arose out of the same incident does not mean that Appellant is entitled to receive concurrent sentences." ***Commonwealth v. Bonner***, 135 A.3d 592, 605 (Pa.Super. 2016).

While an inmate in the Blair County Prison, Appellant committed distinct crimes against a fellow inmate when he chose to forcibly penetrate the complainant's anus with his fingers and a toothbrush. Appellant was also

criminally liable for the violent attack against the complainant in which Appellant's co-conspirators repeatedly punched and kicked the complainant's head with such force that they split his ear. We reject Appellant's suggestion that he is entitled to a volume discount for these crimes.

Accordingly, we conclude that the trial court properly exercised its discretion in imposing consecutive sentences.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2020