J-A20036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
MICHAEL MARTIN   :
  :
Appellant   :   No. 1455 WDA 2019

Appeal from the Judgment of Sentence Entered June 7, 2019
in the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0002923-2017

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:       **FILED: APRIL 6, 2021**

Michael Martin ("Martin") appeals from the judgment of sentence imposed following his convictions of one count each of drug delivery resulting in death, criminal use of a communication facility, criminal conspiracy, possession of a controlled substance, and possession of drug paraphernalia, and two counts each of possession with intent to deliver a controlled substance and persons not to possess firearms.[1] We affirm.

In its Opinion, the trial court set forth the factual background underlying this appeal, which we adopt as though fully set forth herein. *See* Trial Court Opinion, 7/31/19, at 2-9.

---

[1] 18 Pa.C.S.A. §§ 2506, 7512(a), 903(a)(1); 35 P.S. § 780-113(a)(16), (32), (30); 18 Pa.C.S.A. § 6105(a)(1).

On March 21, 2019, a jury found Martin guilty of the above-mentioned crimes. On April 1, 2019, Martin filed a "Motion for Post-trial Relief," challenging, in relevant part, the weight and sufficiency of the evidence in support of the jury's verdict, the trial court's admission into evidence of certain text messages from Martin's cell phone, and a jury instruction that was made by the trial court in response to a question posed by the jury during deliberations.[2] On June 7, 2019, Martin was sentenced to an aggregate term of 15 to 30 years in prison. On July 31, 2019, the trial court entered an Order dismissing Martin's April 1, 2019, Motion. On September 23, 2019, Martin filed a counseled Notice of Appeal.

On October 17, 2019, this Court entered an Order stating that Martin's September 23, 2019, Notice of Appeal was filed outside of the 30-day appeal period,[3] and directing Martin to show cause why his appeal should not be quashed as untimely filed. On October 28, 2019, counsel for Martin, Mark G. Adams, Esquire ("Attorney Adams"), filed a Response with this Court. In his Response, Attorney Adams asserted that he had timely filed the Notice of Appeal, and that a breakdown in court operations caused it to be recorded as untimely filed. This Court subsequently issued an Order, remanding the case

---

[2] The trial court treated Martin's Motion as a post-sentence Motion, and deferred ruling thereon until after Martin's judgment of sentence was entered.

[3] *See* Pa.R.A.P. 903(a) (stating that a notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken.").

to the trial court to develop a record regarding whether a breakdown in the court's operations had impacted Martin's timely filing of his Notice of Appeal.

On January 6, 2021, the trial court issued an Order stating that it had conducted a hearing regarding Attorney Adams's timeliness claim, and concluded that a breakdown in court operations had caused Martin's Notice of Appeal to be untimely filed. **See** Order, 1/6/21, at 1-2.[4] In light of the foregoing, we will address Martin's claims on appeal.

On appeal, Martin raises the following questions for our review:

1. Whether the trial court erred in admitting evidence of text messages despite the fact that said messages were not properly authenticated, were inadmissible hearsay, were inadmissible as prior bad acts, and [were] in violation of the Confrontation Clause?

2. Whether the trial court erred by admitting the autopsy report and testimony despite [C]onfrontation [C]lause violations?

3. Whether the trial court erred in denying the jury the ability to consider evidence of theft in a [d]eath by [d]elivery charge despite evidence of theft being presented at trial?

4. Whether the lower court erred in finding [that] there was sufficient evidence to uphold the verdict?

Brief for Appellant at 7.

_____

[4] The trial court found that Attorney Adams "testified credibly about filing his [N]otice of [A]ppeal on August 29, 2019," and "[h]is Colleague, Dennis Popojas, Esquire, corroborated this claim with credibility." Order, 1-6/21, at 1. The trial court noted that "the [C]lerk of [C]ourt from 2016 through 2019, was under investigation in 2019 by the Pennsylvania State Police for embezzling []$101,876.04 from his office in 2018. According to [Brenda Davis, the current Clerk of Courts,] she and her staff have found numerous filing problems and errors from the months of [August through October] 2019." **Id.** at 2 (footnote omitted).

- 3 -

In his first claim, Martin argues that the trial court erred in admitting into evidence the text messages from Exhibit 45, which were discussed during the trial testimony of Pennsylvania State Trooper Kevin Dejuliis ("Trooper Dejuliis"). Martin advances several grounds on which the trial court erred in admitting these text messages, which we will address separately. First, Martin argues that the text messages were not properly authenticated. *See* Brief for Appellant at 12-16. Martin claims that the Commonwealth did not produce evidence proving that Martin authored the "sent" text messages. *Id.* at 12-14. According to Martin, the fact that the sender of the text messages identified himself in one of the texts as "Miz," a nickname by which Martin was known, is not sufficient to authenticate the text messages. *Id.* at 14-16. Martin states that other people knew him by this nickname, and thus, this information was not information that only Martin would know. *Id.*

> The standard of review governing evidentiary issues is settled. The decision to admit or exclude evidence is committed to the trial court's sound discretion, and evidentiary rulings will only be reversed upon a showing that a court abused that discretion. A finding of abuse of discretion may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Matters within the trial court's discretion are reviewed on appeal under a deferential standard, and any such rulings or determinations will not be disturbed short of a finding that the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case.

*Commonwealth v. Koch*, 106 A.3d 705, 710-11 (Pa. 2014) (citations and quotation marks omitted).

- 4 -

Pennsylvania Rule of Evidence 901 sets forth the standards for authenticating evidence. Rule 901 states, in relevant part, as follows:

**(a) In General.** Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

**(b) Examples.** The following are examples only--not a complete list--of evidence that satisfies the requirement:

* * *

(11) *Digital Evidence.* To connect digital evidence with a person or entity:

(A) direct evidence such as testimony of a person with personal knowledge; or

(B) circumstantial evidence such as:

(i) identifying content; or

(ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901.

"Digital evidence," as used in this rule, is intended to include a communication, statement, or image existing in an electronic medium. This includes emails, text messages, social media postings, and images. The rule illustrates the manner in which digital evidence may be attributed to the author.

**The proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author.** ***See*** Pa.R.E. 901(a).

Pa.R.E. 901, cmt (emphasis added).

Under Pennsylvania Rule of Evidence 901, text messages may be authenticated by: (1) testimony from either the author or the sender; (2) circumstantial evidence, including "distinctive characteristics" like information specifying the author-sender or "reference to or correspondence with relevant events" preceding or following the message; or (3) "any other facts or aspects of the message that signify it to be what its proponent claims." **Commonwealth v. Koch**, … 106 A.3d 705, 712-13 ([Pa.] 2014) (Castille, C.J., in support of affirmance); **see Commonwealth v. Collins**, … 957 A.2d 237, 265-66 ([Pa.] 2008). Further, "authentication generally entails a relatively low burden of proof; in the words of Rule 901 itself, simply 'evidence sufficient to support a finding that the item is what the proponent claims.'" **Koch**, 106 A.3d at 713 (quoting Pa.R.E. 901(a)).

**Commonwealth v. Murray**, 174 A.3d 1147, 1156-57 (Pa. Super. 2017) (brackets omitted).

Here, Martin does not cite to the record, or indicate which of the 209 text messages that were discussed during Trooper Dejuliis's testimony he challenges. Even were we to assume that Martin is challenging all 209 messages, Martin makes no argument regarding the specific messages. Instead, Martin makes a wholesale argument that none of the messages were authenticated. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority[,] or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." **Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009). It is not the role of this Court to "formulate [an a]ppellant's arguments for him." **Id.** at 925. Accordingly, we could find this claim waived.

Nonetheless, in its Opinion, the trial court aptly reviewed all 209 messages, and concluded that the Commonwealth presented sufficient

evidence to authenticate each of the messages. *See* Trial Court Opinion, 7/31/19, at 24-28. We agree with the sound reasoning and determinations of the trial court, as set forth in its Opinion, and we affirm thereon regarding this claim. *Id.*; *see also Murray*, 174 A.3d at 1156 (stating that text messages may be authenticated by "circumstantial evidence, including 'distinctive characteristics' **like information specifying the author-sender**.").

Second, Martin argues that the "sent" messages from Exhibit 45 discussed during Trooper Dejuliis's testimony should have been excluded as hearsay pursuant to Pa.R.E. 803. *See* Brief for Appellant at 16-18. Martin claims that these text messages cannot be admitted under the party-opponent exception to the hearsay rule, *see* Pa.R.E. 803(25), because the Commonwealth did not establish that the text messages were sent by Martin. Brief for Appellant at 16-18.

> Hearsay is an out of court statement offered to prove the truth of the matter asserted. Pa.R.E. 801(C). Generally, it is not admissible, as it lacks guarantees of trustworthiness fundamental to our system of jurisprudence. In order to guarantee trustworthiness, the proponent of a hearsay statement must establish an exception to the rule of exclusion before it shall be admitted.

*Commonwealth v. Manivannan*, 186 A.3d 472, 480 (Pa. Super. 2018) (citation, brackets and quotation marks omitted).

One of the exceptions to the rule against hearsay is an opposing party's statement, which is a "statement [] offered against an opposing party and … made by the party in an individual … capacity." Pa.R.E. 803(25).

> Party admissions are not subject to hearsay exclusion because[] it is fair in an adversary system that a party's prior statements be used against him if they are inconsistent with his position at trial. In addition, a party can hardly complain of his inability to cross-examine himself. A party can put himself on the stand and explain or contradict his former statements. Thus, in criminal cases, [the Supreme Court of Pennsylvania] has consistently held that a defendant's out-of-court statements are party admissions and are exceptions to the hearsay rule.

*Commonwealth v. Edwards*, 903 A.2d 1139, 1157-58 (Pa. 2006) (citations omitted).

Here, the trial court reviewed the "sent" text messages from Exhibit 45, discussed why it was clear that the messages were sent by Martin, and concluded that the text messages were properly admitted as admissions of a party opponent. *See* Trial Court Opinion, 7/31/19, at 23-28; Pa.R.E. 803(25). We agree with the sound reasoning and determinations of the trial court, as set forth in its Opinion, and we affirm thereon regarding this claim. Trial Court Opinion, 7/31/19, at 23-28; Pa.R.E. 803(25); *Edwards*, *supra*.

Third, Martin argues that the "received" text messages from Exhibit 45 discussed during Trooper Dejuliis's testimony should have been excluded as prior bad acts evidence, in violation of Pa.R.E. 404(b)(1). Brief for Appellant at 18-20. Martin claims that the messages were used to prove his character—

specifically, his "propensity to deal in narcotics"—and that "this evidence [was] used to ascertain his guilt." ***Id.*** at 18-19; ***accord id.*** at 19-20.

Rule 404(b)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible **to prove a person's character** in order to show that on a particular occasion the person acted in accordance with the character.  Pa.R.E. 404 (emphasis added).

Here, Martin was charged with criminal use of a communication facility during the period over which the "received" messages were received.  ***See*** Amended Information, 2/15/19, at 1-2 (pages unnumbered).  This charge required proof that Martin "use[d] a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under [the Crimes Code] or under … The Controlled Substance, Drug, Device and Cosmetic Act."  18 Pa.C.S.A. § 7512.  Martin was also charged with possession with intent to deliver a controlled substance, which is a felony under the Controlled Substance, Drug, Device and Cosmetic Act, and conspiracy to commit possession with intent to deliver a controlled substance, which is a felony under the Crimes Code.  ***See*** 35 P.S. 780-113(a)(30); 18 Pa.C.S.A. § 903(a)(1).  Thus, the text messages were admissible to prove that Martin was guilty of criminal use of a communication facility.  Accordingly, the trial court did not abuse its discretion, and this claim fails.

Fourth, Martin argues that admission of the "received" text messages from Exhibit 45, discussed during Trooper Dejuliis's testimony, violated his rights under the Confrontation Clause, *see* U.S. Const. amend. VI. Brief for Appellant at 20-21. Martin claims that the text messages are testimonial; the text senders were available to testify; and Martin did not have a prior opportunity to cross-examine the text-senders. *Id.*

In its Opinion, the trial court identified the "received" messages, stated the applicable law, cogently and thoroughly addressed Martin's claim, and concluded that it lacks merit. *See* Trial Court Opinion, 7/31/19, at 28-30. We agree with the sound reasoning and determinations of the trial court, as set forth in its Opinion, and we affirm thereon regarding this claim. *See id.* Accordingly, each of Martin's claims regarding the trial court's admission of the text messages from Exhibit 45 fails.

In his second claim, Martin argues that the trial court erred when it admitted into evidence the autopsy report of Stacy Greenawalt ("the victim"). *See* Brief for Appellant at 22-23. Martin claims that his rights under the Confrontation Clause were violated because the autopsy report's author, Dr. Leon Rosen ("Dr. Rosen"), was unavailable for cross-examination at trial. *Id.* Martin further argues that the trial court erred in permitting Dr. Abdulrezak Shakir to testify regarding the autopsy, because his testimony was based on Dr. Rosen's conclusions in the autopsy report. *Id.* at 24-26.

Here, Martin did not raise this claim with the trial court at trial or in his Post-Trial Motion. **See** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal."); **Commonwealth v. May**, 887 A.2d 750, 761 (Pa. 2005) (stating that the appellant waived his Confrontation Clause claim where he did not raise the claim at trial). Accordingly, this claim is waived. **See id.**

In his third claim, Martin argues that the trial court erroneously responded to a question raised by the jury during its deliberations. **See** Brief for Appellant at 26-28. Martin points out that the jury asked the trial court, with regard to the drug delivery resulting in death charge, whether "the law hold[s] the supplier accountable if the victim stole the controlled substance without the knowledge of the defendant[.]" **Id.** at 26-28; N.T., 3/21/19, at 81. Martin claims that the trial court improperly instructed the jury that, based on the evidence presented at trial, the jury could not conclude that the victim stole the narcotics that caused her death from Martin. **See** Brief for Appellant at 27-28; N.T., 3/21/19, at 81. According to Martin, because "there [was] no witness of [a drug transaction] between Martin and [the victim]," the jury should have been permitted to infer that the victim may have stolen the drugs from Martin. Brief for Appellant at 27-28.

> It is settled that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial. Rather, there must be some relationship between the evidence presented and the law upon which an instruction is requested. The reason for this rule is that, instructing the jury on legal principles that cannot rationally be applied to the facts

- 11 -

presented at trial may confuse them and place obstacles in the path of a just verdict. Accordingly, a criminal defendant must establish that the trial evidence would reasonably support a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial.

*Commonwealth v. Taylor*, 876 A.2d 916, 925-26 (Pa. 2005) (citations and quotation marks omitted).

Here, the trial court responded to the jury's question by instructing that

[t]he jury can only consider the evidence that was presented in the courtroom via the witnesses, and/or – and the exhibits. You are not permitted to speculate. There was no evidence presented that the victim stole anything that is a controlled substance. There was no evidence of that. So[,] you may not consider that which is not in evidence or things that are reasonably inferred from the evidence presented.

N.T., 3/21/19, at 81.

Our review of the record discloses that there was no evidence presented at trial to suggest that the victim stole from Martin the drugs that caused her death. Thus, the trial court did not err in giving this instruction. *See Taylor*, *supra*. Accordingly, this claim fails.

In his fourth claim, Martin argues that the Commonwealth failed to present sufficient evidence to support his convictions for persons not to possess firearms. *See* Brief for Appellant at 28-32. Martin points out that he was convicted of two counts of persons not to possess firearms, relating to his alleged possession of three firearms. *Id.* at 28-30. The first count was in relation to two firearms: an AR-15 rifle and a .45 caliber handgun. *Id.* at 29. The second count was in relation to a .32 caliber handgun. *Id.* According to

Martin, there was no evidence establishing that he was in actual possession of any of the three firearms, and the evidence was insufficient to prove that he had constructive possession of the firearms. *Id.* at 29-32. Martin further claims that there was no evidence to prove that the three firearms "were in fact firearms under the statute" "since the guns were never recovered." *Id.* at 31.

When considering a challenge to the sufficiency of the evidence, we ascertain

> whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

Section 6105(a)(1) of the Crimes Code states, in relevant part, that

> [a] person who has been convicted of an offense enumerated in subsection (b) … shall not possess, use, control, sell, transfer or

manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).[5]

Here, Martin was convicted of two counts of persons not to possess firearms. Regarding the first conviction, Ricky Litton, Jr. ("Litton"), testified that he had sold Martin two firearms. *See* N.T., 3/19/19, at 9-17. Specifically, Litton stated that he went to Martin's home and negotiated the sale of a Stag AR-15 rifle and a Para .45 caliber handgun to Martin, in exchange for some cocaine and U.S. currency. *Id.* Litton testified that Martin gave Litton the cocaine and money, and Litton gave Martin the two firearms. *Id.* at 15-17. Viewing the evidence in a light most favorable to the Commonwealth, the Commonwealth presented sufficient evidence to convict Martin of the first persons not to possess firearms count. *See* 18 Pa.C.S.A. § 6105(a)(1).

Regarding the second persons not to possess firearms conviction, Samantha Howes ("Howes"), Martin's roommate, testified that she saw Martin in possession of a .32 caliber handgun. N.T., 3/18/19, at 141-45. Specifically, Howes stated that on December 2, 2016, Robbie Huber ("Huber") overdosed on heroin while at the home where Howes and Martin lived. *Id.* Howes testified that she found Huber unresponsive in the bathroom, with a needle sticking out of his arm. *Id.* at 143. Howes and Martin carried Huber's body

---

[5] Martin challenges only whether he was in possession of the firearms, and not whether he was prohibited from possessing a firearm. Accordingly, we will limit our analysis to whether Martin possessed the firearms.

from the bathroom into the hallway and Howes performed CPR on Huber. *Id.* At some point, the .32 caliber gun fell out of Huber's pocket, and Martin picked it up and held onto it. *Id.* at 143-45. Howes testified that Huber regained consciousness, but Martin did not return the handgun to Huber, and instead, retained possession of the handgun. *Id.* Viewing the evidence in a light most favorable to the Commonwealth, the Commonwealth presented sufficient evidence to convict Martin of the second persons not to possess firearms count. *See* 18 Pa.C.S.A. § 6105(a)(1). In light of the foregoing, Martin's sufficiency claims fail.

Accordingly, each of Martin's claims lack merit, and we deny Martin relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/06/2021