J-S36012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT ALLEN TANNER | : | |
| | : | |
| Appellant | : | No. 128 WDA 2025 |

Appeal from the Judgment of Sentence Entered December 12, 2024
In the Court of Common Pleas of McKean County
Criminal Division at No(s): CP-42-CR-0000537-2023

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:      **FILED: DECEMBER 1, 2025**

Robert Allen Tanner appeals from the judgment of sentence entered in the McKean County Court of Common Pleas on December 12, 2024, following Tanner's conviction for numerous sexual offenses. On appeal, Tanner challenges certain evidentiary rulings made by the trial court. We affirm.

On June 18, 2024, following a two day trial, a jury found Tanner guilty of two counts each of rape of a child, involuntary deviate sexual intercourse, statutory sexual assault, and incest of minor, three counts of endangering welfare of children, one count of corruption of minors, and five counts of

---

[*] Retired Senior Judge assigned to the Superior Court.

indecent assault.[1] These charges resulted from the minor victim's disclosure that he had been sexually abused by Tanner, his uncle with whom he lived when he was 8 or 9 years old, from the end of 2022 to the beginning of 2023.

On December 12, 2024, the trial court sentenced Tanner to an aggregate term of 20 to 40 years' incarceration, followed by 3 years' probation, with credit for time served. Tanner filed a post-sentence motion, which was denied by the trial court based on the court's finding that Tanner only made "general assertions that the verdict is against the weight of the evidence and / or is 'tenuous, vague, and uncertain,' without any mention whatsoever of the actual evidence presented at trial or argument as to how and why it is insufficient, etc." Order, 12/26/24. This timely appeal followed.

Tanner raises the following issues on appeal:

1. The trial court erred in qualifying[] Brenda Manno[] as an expert because she did not possess sufficient knowledge, skill, experience, training, or education to be qualified as such.

2. The trial court erred in sustaining the Commonwealth's objection to an excited utterance made by the victim's mother following a threat by Tanner to call the police.

Appellant's Brief, at 2.

Both of Tanner's issues challenge evidentiary rulings made by the trial court. Our standard of review for the admission of evidence is well-settled:

---

[1] Respectively, 18 Pa.C.S.A. § 3121(c); 18 Pa.C.S.A. § 3123(b); 18 Pa.C.S.A. § 3122.1(b); 18 Pa.C.S.A. § 4302(B)(1); 18 Pa.C.S.A. § 4304(a)(1); 18 Pa.C.S.A § 6301(a)(1)(ii); and 18 Pa.C.S.A. § 3126(a)(7).

The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. [A]n evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict.

***Commonwealth v. Manivannan***, 186 A.3d 472, 479-480 (Pa. Super. 2018) (citations and quotation marks omitted).

In his first issue, Tanner contends the trial court erred by allowing Brenda Manno to testify as an expert witness, specifically arguing that Manno was not qualified to testify as an expert in the dynamics of sexual abuse and victim responses to sexual abuse.

Relevantly, Manno testified to her experience and research regarding factors that could come into play with disclosure of sexual abuse by a child. Specifically, Manno testified to her opinion that it is not unusual that a victim of assault would not immediately report the abuse, or would deny that they had been assaulted when directly asked. ***See*** N.T., Jury Trial—Day 2, 6/17/24, at 29. Manno testified to some factors that could play a role in whether a child discloses initially, does not disclose at all, or discloses over time, i.e., relationship of the offender to the victim, embarrassment, male victims being

- 3 -

abused by male offenders being fearful of the effect on their sexuality, fear of changing dynamics with a friend or family member, and protecting the offender. *See id.* at 30-31. Manno also testified to her opinion about whether the victim and offender's familial relationship and/or age would have any effect on the reporting or lack thereof, explaining that "the younger the child is, they tend to be more vulnerable and more easily cognitively manipulated." *Id.* at 32. Manno made it clear that she did not interview the victim in this case, and was not giving an opinion on whether or not the victim in this case was telling the truth, as that is a job for the jury. *See id.* at 28, 33, 36-37.

In reviewing a challenge to the trial court's discretion in allowing expert testimony, we are mindful of the following:

> The standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine. A witness does not need formal education on the subject matter of the testimony, and may be qualified to render an expert opinion based on training and experience.
>
> Expert testimony is permitted as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. Conversely, expert testimony is not admissible where the issue involves a matter of common knowledge.

*Commonwealth v. Smith*, 206 A.3d 551, 560 (Pa. Super. 2019) (citations and quotation marks omitted).

Generally, the admission of expert testimony is governed by Pennsylvania Rule of Evidence 702, which provides:

**Rule 702. Testimony by Expert Witnesses**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

However, expert testimony in a criminal proceeding implicating sex offenses is specifically governed by 42 Pa.C.S.A. § 5920, which provides:

**(b) Qualifications and use of experts**.—

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

42 Pa.C.S.A. § 5920(b)(1)-(2).

Notably, Tanner does not discuss Section 5920 at all, let alone cite to any case law that is pertinent to qualifying an expert under this section. Nevertheless, we reject Tanner's argument that Manno was unqualified to testify as an expert on the dynamics of sexual violence and victim responses to sexual violence based on Tanner's proclamation that Manno "had performed no independent research, had no publications, had not authored a textbook nor authored even a chapter in a textbook, and had no peer reviewed publications whatsoever …." Appellant's Brief, at 14. Tanner cites to no authority for the insinuation that any of these factors are prerequisites for any expert witness, let alone an expert witness being qualified under Section 5920.

Here, the Commonwealth sought to qualify Manno as an expert witness on the dynamics of sexual violence and victim responses to sexual violence pursuant to Section 5920(b)(1). **See** N.T., Jury Trial–Day 1, 6/17/24, at 17. Manno is a licensed clinical social worker, and Sexual Offender Assessment Board member, who has earned a Bachelor's degree in Psychology and a Master's degree in Social Work, and at the time of trial was completing a Doctorate degree in Social Work. **See id.** at 13-14. She works as a professor in Social Work and Sociology at Penn-West University, and is the director of a program called Project Point of Light, which is an out-patient program that specializes in treating forensic patients and victims of abuse. **See id.** at 14-15.

Manno testified to her over thirty years of training and experience. ***See id.*** at 15. Upon voir dire questioning, Manno explained that her experience in the disclosure of sex abuse by minor victims goes back to when she worked in child services in 1993. ***See id.*** at 23. Since that time, including her work in private practice, Manno estimated that she has interviewed well over a thousand children with allegations of sexual abuse, including a focus on the disclosure process. ***See id.*** at 24. Manno further testified to her history of testifying as an expert witness in over 25 counties, including testifying as an expert on the disclosure process and how familial relationships may impact the disclosure process. ***See id.*** at 16, 24.

As such, we conclude the trial court did not abuse its discretion when it qualified Manno as an expert witness in the dynamics of sexual violence and victim responses to sexual abuse, as her education and experience gave her a reasonable pretension to specialized knowledge in this area.

In his second and final claim, Tanner argues the trial court erred in failing to admit a statement made by the victim's mother. Relevantly, during trial, the trial court sustained the Commonwealth's objections, based on hearsay, to defense counsel's attempts to elicit what the victim's mother said during an alleged argument with Tanner. While it was not made clear during trial, Tanner appears to believe the victim's mother's statement would have helped the defense establish a motive for her to blame Tanner for the acts of someone else. ***See*** Appellant's Brief, at 17-18.

Hearsay is a statement that the declarant does not make while testifying at trial and is offered into evidence to prove the truth of the matter asserted. **See** Pa.R.E. 801(c). Hearsay is inadmissible unless an exception applies. **See** Pa.R.E. 802 ("Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute."). One exception is the excited utterance exception. **See** Pa.R.E. 803(2). An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2).

Our Supreme Court has explained the requirements for an excited utterance as follows:

> A spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties. There is no clearly defined limit as to the time sequence required for a statement to qualify as an excited utterance; instead, a fact-specific inquiry is made for each case to determine whether the utterance and the event are in close enough proximity.

**Commonwealth v. Jones**, 912 A.2d 268, 282 (Pa. 2006) (citations omitted; paragraphing altered).

Here, defense counsel was questioning Tanner about an alleged incident that occurred a few months prior to the instant charges being filed, where the victim's mother showed up at Tanner's house yelling and screaming. Defense

- 8 -

counsel asked Tanner what "the yelling and screaming was about?" N.T., Jury Trial—Day 2, 6/18/24, at 32-33. Tanner responded, "She [the victim's mother] was there to take the kids like that. She had paperwork." *Id.* at 32. The Commonwealth immediately lodged an objection, based on hearsay. *See id.* at 33. Upon the court seeking further clarification, the following pertinent discussion occurred:

> [Defense counsel]: Based on—I'm not offering it for the truth of matter. It's just an argument that's ongoing here. There is a statement that I am going to ask him. But I believe there's a hearsay [exception]. One of two that could apply to that particular statement.
>
> THE COURT: How is it not offered for the truth?
>
> [Defense counsel]: Well, I can ask him just to describe it—it's an argument. She's there upset and angry.
>
> THE COURT: I want to sustain the objection.
>
> [Defense counsel]: Okay.

*Id.* at 33. The court then sustained the objection and informed the jury not to consider Tanner's last response. After going forward, defense counsel started his line of questioning about the argument again, specifically stating he did not want Tanner to get into what the mother was saying. *See id.* at 34. Tanner testified that the victim's mother was yelling and screaming, and he asked her to leave "repeatedly." *Id.* When she allegedly continued to scream at him, Tanner told her he was going to call the police if she did not leave. *See id.* at 34-35. Despite the previous discussion with the court, defense counsel then

asked, "What did she say when you made that statement?" *Id.* at 35. The Commonwealth immediately objected again, based on hearsay.

In response to the court asking why the victim's mother's response would not be hearsay, defense counsel clarified that her response to Tanner threatening to call the police was, "if you … call the police, you'll be sorry." *Id.* at 35. Defense counsel then admitted the statement was being offered for the truth of the matter asserted, contrary to his earlier representation, but argued it was an exception to the hearsay rule as an excited utterance. *See id.* at 35-36. Specifically, defense counsel argued the startling event was Tanner threatening to call the police, and the excited utterance was the mother saying "you'll be sorry." *See id.* at 35. The court expressed skepticism that threatening to call the police constituted a startling event. *See id.* at 36. After defense counsel argued that the statement could also fall under another exception for motive or intent, the court sustained the objection. *See id.* at 36. Defense counsel then tried to elicit testimony from Tanner that the mother "threatened" him. *Id.* The court again sustained the Commonwealth's objection, finding the response would still constitute hearsay, just in more general terms. *See id.* at 37.

Upon review, we find Tanner has simply not provided any evidence that the victim's mother was under the stress of a startling event when she made the statement in question. Despite Tanner's self-serving testimony that the mother was screaming and yelling, there is no evidence that Tanner was

similarly heated during the discussion. Tanner's testimony that, in response to someone refusing to leave his property, he merely stated he was going to call the police, is simply not sufficient on its own to constitute an unexpected or shocking occurrence that would cause a reflective, stressed, response. Calling the police on someone who is unwelcome on your property is an obvious and normal reaction that is not startling in the least.

We conclude the trial court was correct in concluding the statement at issue is hearsay, and that it did not fall under any exception to the hearsay rule. Accordingly, we do not find the trial court erred by not admitting the statement into evidence. This issue also warrants no relief.

As none of Tanner's issues merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/1/2025